IN THE UNITED STATES DISTRICT COURT

FOR THE DISTRICT OF SOUTH CAROLINA

| | |
|---|---|
| DEL S. SLAGLE, | ) |
| | ) |
| | ) CIVIL ACTION NO. 0:06-1273-HFF-BM |
| Plaintiff, | ) |
| | ) |
| v. | ) **REPORT AND RECOMMENDATION** |
| | ) |
| MICHAEL J. ASTRUE,[1] | ) |
| COMMISSIONER OF SOCIAL | ) |
| SECURITY, | ) |
| | ) |
| Defendant. | ) |
| _____ | ) |

The Plaintiff filed the complaint in this action pursuant to 42 U.S.C. § 405(g), seeking judicial review of the final decision of the Commissioner wherein he was denied disability benefits. This case was referred to the undersigned for a report and recommendation pursuant to Local Rule 73.02(B)(2)(a), (D.S.C.).

Plaintiff applied for Disability Insurance Benefits (DIB) and Supplemental Security Income (SSI), alleging disability as of November 18, 2002 due to coronary artery disease, degenerative disc disease, gastroesophageal reflux disease and anxiety. (R.pp. 16, 54). Plaintiff's claims were denied initially and upon reconsideration. Plaintiff then requested a hearing before an Administrative Law Judge (ALJ), which was held on January 13, 2005. (R.pp. 183-221). The ALJ

---

[1] On February 12, 2007, Michael J. Astrue was sworn in as the Commissioner of Social Security. Pursuant to Rule 25(d)(1) of the Federal Rules of Civil Procedure, Michael J. Astrue should be substituted, therefore, for Commissioner Jo Anne B. Barnhart as the Defendant in this suit. No further action need be taken to continue this suit by reason of the last sentence of 42 U.S.C. § 405(g) (2000).



thereafter denied Plaintiff's claims in a decision issued October 20, 2005. (R.pp. 15-25). The Appeals Council denied Plaintiff's request for a review of the decision, thereby making the determination of the ALJ the final decision of the Commissioner. (R.pp. 6-9).

The Plaintiff then filed this action in United States District Court.  Plaintiff asserts that there is not substantial evidence to support the ALJ's decision, and that the decision should be reversed and remanded for an award of benefits. The Commissioner contends that the decision to deny benefits is supported by substantial evidence, and that the Plaintiff was properly found not to be disabled.

## Scope of review

Under 42 U.S.C. § 405(g), the Court's scope of review is limited to (1) whether the Commissioner's decision is supported by substantial evidence, and (2) whether the ultimate conclusions reached by the Commissioner are legally correct under controlling law. Hays v. Sullivan, 907 F.2d 1453, 1456 (4th Cir. 1990); Richardson v. Califano, 574 F.2d 802, 803 (4th Cir. 1978); Myers v. Califano, 611 F.2d 980, 982-983 (4th Cir. 1980). If the record contains substantial evidence to support the Commissioner's decision, it is the court's duty to affirm the decision.  Substantial evidence has been defined as:

> evidence which a reasoning mind would accept as sufficient to support a particular conclusion.  It consists of more than a mere scintilla of evidence but may be somewhat less than a preponderance. **If there is evidence to justify refusal to direct a verdict were the case before a jury, then there is "substantial evidence."** [emphasis added].

Hays, 907 F.2d at 1456 (citing Laws v. Celebrezze, 368 F.2d 640 (4th Cir. 1966)).  The Court lacks the authority to substitute its own judgment for that of the Commissioner. Laws, 368 F.2d at 642. "[T]he language of [405(g)] precludes a de novo judicial proceeding and requires that the court

2



uphold the [Commissioner's] decision even should the court disagree with such decision as long as it is supported by substantial evidence." Blalock v. Richardson, 483 F.2d 773, 775 (4th Cir. 1972).

### **Discussion**

A review of the record shows that Plaintiff, who was thirty-seven (37) years old when he alleges his disability began, has a tenth grade education with past relevant work experience as a security officer and a mechanic/technician. (R.pp. 58, 89, 186, 574). In order to be considered "disabled" within the meaning of the Social Security Act, Plaintiff must show that he has an impairment or combination of impairments which prevent him from engaging in all substantial gainful activity for which he is qualified by his age, education, experience and functional capacity, and which has lasted or could reasonably be expected to last for at least twelve (12) consecutive months. After a review of the evidence and testimony in the case, the ALJ determined that, although Plaintiff was unable to perform his past relevant work, he nevertheless retained the residual functional capacity to perform a significant range of light work[2], and was therefore not disabled. (R.pp. 24-25).

Plaintiff asserts that in reaching this decision, the ALJ erred by failing to find that his headaches and fatigue were "severe" impairments, by failing to perform a proper analysis regarding his severe coronary artery disease and by failing to explain the lack of weight accorded to the opinion of Plaintiff's treating physician, by misstating facts and evidence in order to improperly assess Plaintiff's credibility, and for violating SSR 96-8p by failing to consider the effect of Plaintiff's

---

[2]"Light work involves lifting no more than 20 pounds at a time with frequent lifting or carrying of objects weighing up to 10 pounds. Even though the weight lifted may be very little, a job is in this category when it requires a good deal of walking or standing, or when it involves sitting most of the time with some pushing and pulling of arm or leg controls." 20 C.F.R. § 404.1567(b) (2005).

3



headaches, chest pain and fatigue on his ability to work a fulltime job. However, after careful review and consideration of the evidence and arguments presented, the undersigned finds that there is substantial evidence in the record to support the conclusion of the ALJ that Plaintiff was not disabled as that term is defined in the Social Security Act during the relevant time period, and that the decision of the Commissioner should therefore be affirmed.

      First, while Plaintiff's medical record does confirm that he suffers from coronary artery disease, which the ALJ specifically found was an impairment that was "severe" within the meaning of the Social Security regulations, the ALJ did not find that the remainder of Plaintiff's complaints constituted "severe" impairments under the regulations. (R.pp. 20-21). There is substantial evidence in the record to support the ALJ's decision with respect to these other medical complaints. The record reflects that Plaintiff received only conservative treatment for his complaints of headaches, and that he was prescribed valium for his anxiety. (R.pp. 110, 136, 171, 192). Plaintiff's mere complaints of headaches, or that he experienced anxiety because of his coronary condition, and for which he received conservative treatment, are not "severe" impairments under the Social Security regulations. Robinson v. Sullivan, 956 F.2d 836, 840 (8th Cir. 1992) [conservative treatment not consistent with allegations of disability]; Gross v. Heckler, 785 F.2d 1163, 1166 (4th Cir. 1986) ["[A] psychological disorder is not necessarily disabling. There must be a showing of related functional loss"]. Substantial evidence also supports the ALJ's finding that Plaintiff's complaints of degenerative disc disease was not a "severe" impairment. (R.pp. 20-21). See (R.pp. 172 [noting negative radiographic evaluation of Plaintiff's cervical spine], 138 [noting that x-rays of Plaintiff's lumbar spine and right shoulder were essentially normal, and that Plaintiff had no significant degenerative disease]. See also 20 C.F.R. § 404.1521(a) [in order to be deemed "severe",



an impairment or combination of impairments must significantly limit the physical or mental ability to do basic work activities].

There is also substantial evidence to support the ALJ's finding that Plaintiff's coronary artery disease, even though severe, was not of a disabling severity. See Gross v. Heckler, 785 F.2d 1163, 1166 (4th Cir. 1986) [the mere presence of impairments does not automatically entitle a claimant to disability benefits, there must be a showing of related functional loss]; Trenary v. Bowen, 898 F.2d 1361, 1364 (8th Cir. 1990) [Courts should properly focus not on a claimant's diagnosis, but on the claimant's actual functional limitations]. The record reflects that Plaintiff was hospitalized with an acute inferior myocardial infarction in November 2002, his alleged disability onset date, and was treated with angioplasty and placement of a stent. (R.p. 112).[3] Admittedly, Plaintiff has continued to experience medical problems connected with his coronary artery disease since 2002, but the record does not indicate that these problems are disabling.

In February 2003, it was noted that Plaintiff was able to walk a quarter of a mile without difficulty. (R.p. 167). In April 2003, Plaintiff underwent a treadmill test and completed ten (10) minutes without chest pain, and a cardiac perfusion scan showed that Plaintiff had an ejection fraction of 63%, which is considered normal. (R.pp. 98-99). Plaintiff's treating cardiologist, Dr. L.K. Howard, noted following an examination on April 8, 2003 that, while Plaintiff should avoid climbing stairs at work, he could otherwise work eight (8) hours a day. (R.p. 99). See Coffman v. Bowen, 829 F.2d 514, 517 (4th Cir. 1987) ["The opinion of a claimant's treating physician must be given great weight"].

---

[3]These hospital records are not cited to in the record by either party. The medical evidence on page 112 of the record is a medical summary from April 2003, which makes reference to the fact that Plaintiff was hospitalized in November 2002 and treated as indicated hereinabove.

5



On April 18, 2003, Dr. Howard performed another catherization to correct restenosis in Plaintiff's right coronary artery stent and to place a new stent in the left coronary artery "with a good result." Plaintiff was discharged home and encouraged to stop smoking. Dr. Howard noted that Plaintiff complained of headaches, and he was advised to follow-up with his family physician with respect to that complaint. (R.pp. 109-110). In September 2003, Plaintiff reported to Dr. Howard that he was not experiencing much chest discomfort, although he felt "fatigued". (R.p. 167). On January 14, 2004, Dr. Howard noted that, over the previous few weeks, Plaintiff had had "occasional exertional chest pain." Dr. Howard reported that Plaintiff

> underwent left heart catherization and coronary arteriograms. The two stents were patent. There were no areas of severe narrowing. There were areas of irregularity and mild narrowing at the left and right coronary arteries. It was felt that [Plaintiff's] pain was likely non-cardiac in origin.

(R.p. 122).

Plaintiff's ejection fraction was estimated at 55%. (R.p. 125).

Dr. Howard saw Plaintiff again for complaints of chest pain on June 11, 2004, at which time he noted that Plaintiff's pain "was likely non-cardiac in etiology since his troponin levels were normal." (R.p. 149). Dr. Howard also noted that the Plaintiff had "recently fractured his ankle playing sports." (R.p. 150). On July 2, 2004, Plaintiff completed twelve (12) minutes on the treadmill with no chest discomfort, resulting in a negative treadmill EKG stress test finding, with an ejection fraction calculated at 59%. (R.p. 162).

In addition to Dr. Howard's medical notes and findings, the record reflects that Plaintiff also underwent a consultative examination by Dr. Temisan Etikerentse on April 6, 2004, who found that Plaintiff's heart had no murmurs, no gallops, no additional heart sounds, and no chest wall tenderness. Dr. Etikerentse opined that, with Plaintiff's history of significant coronary artery

6



disease, he would not be able to walk for long periods of time or lift or perform any strenuous activity, but might be able to benefit from a sedentary-type position.  (R.pp. 135-139).

Finally, the record contains opinions from two state agency medical consultants, who completed residual functional capacity assessments after review of Plaintiff's medical records.  On April 12, 2004, Dr. Charles McKenzie determined that Plaintiff could perform light work with the need to avoid certain environmental hazards such as extreme cold and heat, humidity, concentrated exposure to fumes, odor, dust and gases, as well as avoidance of unprotected heights and moving machinery. (R.pp. 140-147).  On July 2, 2004, Dr. Katrina Doig also found that Plaintiff could perform light work with the avoidance of certain environmental hazards. (R.pp. 154-161).

The ALJ reviewed this medical evidence in his decision, and after consideration of this evidence and Plaintiff's subjective testimony determined that Plaintiff retained the residual functional capacity to perform a limited range of  light work that did not require concentrated exposure to temperature extremes, high humidity, fumes, dust, gases, strong odors or poor ventilation, and that also would not require work at unprotected heights or around dangerous moving machinery or require driving. (R.p. 22).  The records from Plaintiff's treating and examining physicians cited hereinabove provide substantial evidence to support these finding; see Hunter v. Sullivan, 993 F.2d 31, 35 (4th Cir. 1993) [ALJ may properly give significant weight to assessments of examining physicians];  Richardson v. Perales, 402 U.S. 389, 408 (1971) [assessment of examining, non-treating physicians may constitute substantial evidence in support of a finding of non-disability]; as do the opinions of the non-examining state agency physicians. See  Smith v. Schweiker, 795 F.2d 343, 345 (4th Cir. 1986) [opinion of non-examining physicians can constitute substantial evidence to support the decision of the Commissioner].  Plaintiff's argument in his brief

7



that the ALJ never stated in her decision that she relied on the opinions of the state agency medical consultants is simply not correct, as the ALJ specifically references these medical records, and the fact that she had relied on these medical records, in her decision. (R.pp. 19-20). Further, Dr. Etikerentse's comment that Plaintiff might "benefit from a sedentary-type position" does not require a finding that Plaintiff is limited to only sedentary type work, nor is it even an opinion by Dr. Etikerentse that Plaintiff can only perform sedentary type work. In any event, Dr. Etikerentse's examination findings comport with the remainder of the medical evidence. Hays, 907 F.2d at 1456 [It is the responsibility of the ALJ to weigh the evidence and resolve conflicts in that evidence].

Plaintiff also argues that the ALJ did not specifically discuss Listing 4.04C - Ischemic heart disease, in her decision. However, the ALJ's analysis contains a detailed discussion of Plaintiff's records concerning his heart condition, with special consideration being given to Listings 1.00 and 4.00. (R.pp. 17-21). See Miller ex rel. Thompson v. Barnhart, 205 Fed.Appx. 677, 680 (10th Cir. Nov. 9, 2006) [holding that "[w]here an ALJ provides detailed findings...that confirm rejection of the listings in a manner readily reviewable," the ALJ's decision should be affirmed], citing Fischer-Ross v. Barnhart, 431 F.3d 729, 734 (10th Cir. 2005). Furthermore, Plaintiff has pointed to no evidence to show that he meets the listing requirements of 4.04C, which requires evidence of ischemic heart disease with chest discomfort associated with myocardial ischemia, as described in Section 4.00E3. See 20 C.F.R.Pt. 404 subpt. P, Appx. 1, Listing 4.04; Sullivan v. Zebley, 494 U.S. 521, 530-531 (1990) [An impairment that manifests only some of the criteria of a listing, no matter how severe, does not qualify.]; Keane v. Commissioner of Social Sec., 205 Fed.Appx. 748, 757 (11th Cir. 2006) [Substantial evidence supports the ALJ's implicit decision that Plaintiff did not establish his impairment met or equaled the relevant Listing].



Plaintiff further argues that in reaching her decision the ALJ improperly discounted the opinion of Dr. Jeffrey Santi, who Plaintiff characterizes as a "treating" physician, and who wrote a "To Whom It May Concern" letter on February 1, 2005 in which he stated that he had recommended that Plaintiff have another cardiology evaluation, and that he could not perform any work until he had seen and been cleared by the cardiologist. (R.p. 178). It is not clear, however, that Dr. Santi should be accorded the position of a treating physician, as there is no indication in the record that Dr. Santi treated Plaintiff on an ongoing basis for any consistent length of time. In any event, Dr. Santi is a family practitioner, and while the ALJ noted his assessment in her decision; (R.p. 18); she further noted that Dr. Santi did not actually make a finding with respect to Plaintiff's condition, but instead merely recommended that Plaintiff have another evaluation by a cardiologist. The record in this case is, of course, replete with evidence from Plaintiff's treating cardiologist, Dr. Howard, which does not show that Plaintiff's coronary artery disease was of a disabling severity. See (R.pp. 98-99, 109-110, 122, 125, 149-150, 162, 167); see also 20 C.F.R. § 404.1527(d)(5) (2001) [opinion of a specialist about medical issues related to his or her area of specialty are entitled to more weight than the opinion of a physician who is not a specialist]; Craig v. Chater, 76 F.3d 585, 589-590 (4th Cir. 1996) [noting importance of treating physician's opinion]. The undersigned can find no reversible error in the ALJ's treatment of Dr. Santi's "To Whom It May Concern" letter of February 1, 2005.

Plaintiff's argument that the decision should be reversed because the ALJ conducted a flawed credibility analysis is also without merit. The ALJ reviewed Plaintiff's testimony regarding the nature and extent of his limitations, and compared his testimony with his activities and the objective medical evidence in finding that his testimony was not fully credible. (R.pp. 19-20). The

9



undersigned does not find that the ALJ mis-stated facts to justify her credibility determination, and the undersigned can otherwise find no reversible error in the ALJ's treatment and consideration of this evidence. The ALJ thoroughly reviewed both the medical evidence and Plaintiff's testimony as to the extent of his impairments and pain in reaching her decision, carefully discussing the evidence in making her findings. Hunter, 993 F.2d at 35 [ALJ may properly consider inconsistencies between a plaintiff's testimony and the other evidence of record in evaluating the credibility of the plaintiff's subjective complaints]; Jolley v. Weinberger, 537 F.2d 1179, 1181 (4th Cir. 1976) [finding that objective medical evidence, as opposed to the claimant's subjective complaints, supported an inference that he was not disabled]; Mickles v. Shalala, 29 F.3d 918, 925-926 (4th Cir. 1994) [In assessing the credibility of the severity of reported subjective complaints, consideration must be given to the entire record, including the objective and subjective evidence]; see Cruse v. Bowan, 867 F.2d 1183, 1186 (8th Cir. 1989) ["the mere fact that working may cause pain or discomfort does not mandate a finding of disability"].

Finally, Plaintiff also complains that the ALJ did not adequately explain her findings regarding his residual functional capacity as required by SSR 96-8p. This SSR requires the ALJ to reference evidence supporting her conclusions with respect to a claimant's RFC, citing the specific medical facts and non-medical evidence, and including a discussion of why claimed functional limitations and restrictions cannot reasonably be accepted. Again, the Court does not find any reversible error in the ALJ's decision when considered in conjunction with the requirements of SSR 96-8p. The decision reflects that the ALJ discussed the medical records and the findings of Plaintiff's physicians, as well as Plaintiff's own subjective testimony, noting how the medical evidence did not show any significant degenerative disc disease or evidence of headaches and anxiety



sufficient to more than minimally affect Plaintiff's ability to perform work related activity, and discussing Plaintiff's activities of daily living and the fact that Plaintiff's nuclear stress testing as recently as 2005 showed only "mild" abnormalities.  This review, discussion and analysis satisfied the requirements of SSR 96-8p.  *Cf.* Roberts v. Masanari, 150 F.Supp.2d 1004, 1010 (W.D.Mo. 2001); Buckholtz v. Barnhart, 98 Fed.Appx. 540, 547 (7th Cir. 2004); Delgado v. Commissioner of Social Serv., 30 Fed.Appx. 542, 547-548 (6th Cir. 2002).  Plaintiff's argument that the ALJ should have gone into even greater detail with respect to her findings is without merit, as "'the ALJ need only articulate how the evidence in the record supports the RFC determination, discuss the claimant's ability to perform sustained work-related activities, and explain the resolution of any inconsistencies in the record.'" Delgado, 30 Fed.Appx. at 548 (quoting Bencivengo v. Comm'r of Soc. Sec., 241 F.3d 153 (table), No. 00-1995 (3d Cir. Dec. 19, 2000)); Rogers v. Barnhart, 204 F.Supp.2d 885, 889 (W.D.N.C. 2002). See also Osgar v. Barnhart, No. 02-2552, 2004 WL 3751471 at *2 (D.S.C. Mar. 29, 2004), aff'd, 117 Fed.Appx. 896 (4th Cir. Jan. 5, 2005).

## Conclusion

Substantial evidence is defined as " ... evidence which a reasoning mind would accept as sufficient to support a particular conclusion."  Shively v. Heckler, 739 F.2d 987, 989 (4th Cir. 1984).  As previously noted, if the record contains substantial evidence to support the decision (i.e., if there is sufficient evidence to justify a refusal to direct a verdict were the case before a jury), this Court is required to uphold the decision, even should the Court disagree with the decision. Blalock, 483 F.2d at 775.

Under this standard, the record contains substantial evidence to support the conclusion of the Commissioner that the Plaintiff was not disabled within the meaning of the Social Security Act

11



during the relevant time period. Therefore, it is recommended that the decision of the Commissioner be **affirmed**.

　　　　　　　　　　　　　　　　　　　_____
　　　　　　　　　　　　　　　　　　　Bristow Marchant
　　　　　　　　　　　　　　　　　　　United States Magistrate Judge

Columbia, South Carolina

May   21,   2007



12